# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TERRENCE LONDON, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-00726 |
| ) | Judge Trauger |
| STATE OF TENNESSEE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Terrence London, Sr., an inmate in the custody of the Davidson County Sheriff's Office in Nashville, Tennessee, has filed a pro so complaint for violation of his civil rights pursuant to 42 U.S.C. § 1983 (Doc. No. 1) and a supplement to that complaint (Doc. No. 4).

The plaintiff's complaint, as supplemented, is now before this court for initial screening pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A, and 42 U.S.C. § 1997e.

## I.  Initial Review of the Complaint

### A.  PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915A, the court must conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. This initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the court must view the complaint in the light most favorable to the plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

### B. Section 1983 Standard

The plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, the plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused

by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

### C. Allegations and Claims

The plaintiff alleges that on September 4, 2017, he was racially profiled by Officer Jiyayi Suleyman of the Metropolitan Nashville Police Department while he was sitting in a friend's car in a hotel parking lot. (Doc. No. 1 at 5.) The plaintiff alleges that Officer Suleyman arrested him and two white American females and charged the plaintiff with "casual exchange." (*Id.*) He alleges that Officer Suleyman did not have probable cause to harass him that day. The plaintiff next alleges that Officer Suleyman racially profiled him three days later, at a restaurant. (*Id.*) He alleges that Officer Suleyman strip-searched him and arrested him for "things I didn't have in my possession." (*Id.*) The plaintiff alleges that, after he was booked into jail, Officer Suleyman "came back and gave me added charges for evidence I know nothing about on September 4, 2017." (*Id.*) He also alleges that Officer Suleyman had previously arrested the plaintiff's son and had threatened to send the plaintiff to the federal penitentiary. (*Id.*)

The plaintiff claims that Officer Suleyman's actions violated his Fourth Amendment rights. He has sued the State of Tennessee and the Metropolitan Nashville Police Department for hiring Officer Suleyman, a corrupt officer who is a known gang member. (*Id.* at 6.) He alleges that Officer Suleyman was known by these defendants to be a corrupt police officer and a known member of the Kurdish Pride gang. (Doc. No. 4 at 1.) He alleges that Officer Suleyman was arrested for 56 counts of obstructing justice in March of 2018. (*Id.*) The plaintiff alleges that Officer Suleyman targeted him because he had previously arrested the plaintiff's son, who had a conflict with another member of Suleyman's gang. (*Id.*) He also accuses Suleyman of perjury at the plaintiff's bond

3

reduction hearing on September 21, 2017, and of falsifying police reports, tampering with evidence, illegally obtaining evidence, and entrapment. (*Id.* at 2.)

The plaintiff also alleges that he filed a complaint against Officer Suleyman with Internal Affairs in July of 2018, but that the Metropolitan Nashville Police Department denied this complaint. (*Id.*) He alleges that the State of Tennessee has had him "bound over in criminal court since December 7, 2017;" that he has been to criminal court five times and still has not been arraigned; and that the State, the District Attorney's Office, and Judge Monty Watkins all knew that Officer Suleyman had been his arresting officer twice and that Suleyman was corrupt and had been arrested. (*Id.* at 3.) The plaintiff alleges that he "was denied bond because of Officer Suleyman's perjury under oath and [is] being false imprisoned because of his corrupted actions." (*Id.*)

The plaintiff seeks ten million dollars in damages for his losses, pain, and mental suffering. (Doc. No. 1 at 6.)

**D.  Analysis**

While the plaintiff claims that his Fourth Amendment rights were violated when he was arrested without probable cause by Officer Suleyman, he does not name Officer Suleyman as a defendant. Rather, he names as defendants the State of Tennessee and the Narcotics Division of the Metropolitan Nashville Police Department, seeking monetary damages from these defendants because they employed Officer Suleyman.

However, the Eleventh Amendment bars a suit in federal court by a citizen against a state, unless the state has expressly consented to suit by waiving its sovereign immunity or Congress has clearly overridden that immunity. *Pennhurst State Schl. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Ragan v. Tennessee*, No. 3:14-0392, 2014 WL 648287, at *1 (M.D. Tenn. Feb. 19, 2014).

4

Because Tennessee has not expressly waived its Eleventh Amendment immunity, nor has Congress overridden its immunity from civil rights complaints, the plaintiff cannot proceed against the State in this case. *Ragan*, 2014 WL 648287, at *1 (citing *Berndt v. Tennessee*, 796 F.2d 879 (6th Cir. 1986)).

Moreover, a local police department (or a division thereof) is not a "person" subject to suit under § 1983. *Id.* (citing *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007)). Even if the court were to construe the claim against the police department as a claim against the municipal government of Nashville, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("This court has held that § 1983 liability must be based on more than respondeat superior, or the right to control employees."); *Feliciano v. City of Cleveland*, 988 F.2d 649, 654–55 (6th Cir. 1993) (noting that section 1983 "extends liability only to persons who 'cause' constitutional violations, and municipalities do not 'cause' constitutional violations solely by having employed a constitutional tortfeasor"). While municipal employers may be liable under § 1983 if the plaintiff's injury was inflicted through the execution of a municipal policy or custom, *Monell*, 436 U.S. at 694, the plaintiff does not allege that it was a policy of the Metropolitan Nashville Police Department to employ officers with gang affiliations or who are otherwise corrupt, or that any action attributed to Officer Suleyman was taken pursuant to police department policy or custom.

To the extent that the complaint can be construed as alleging that the municipal government was negligent in hiring Officer Suleyman, such a claim can be made under § 1983 only if the government, in making that hire, is alleged to have disregarded the known or obvious risk of the

5

harm that befell the plaintiff at Suleyman's hands. "In other words, a plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 426 (M.D. Penn. 2014) (citing *Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 411 (1997)). In this case, the plaintiff does not allege that, when Suleyman was hired, the municipal government knew of and disregarded the risk that he would use racial profiling and dishonest methods to arrest suspects without probable cause. *See id.* ("Courts that have addressed *Brown* have consistently interpreted it to mean that municipal liability for negligent hiring based on a single hiring decision requires the threat identified in an applicant's background to be basically *identical* to the harm eventually caused by the applicant.") (emphasis in original).

While the plaintiff alleges that his complaint to Internal Affairs regarding Suleyman was denied by the Police Department and that his criminal prosecution by the State has been protracted, despite the fact that Suleyman was his arresting officer, these allegations do not support viable claims against the named defendants. To the extent that the plaintiff's allegations might be construed as raising a claim of false arrest or imprisonment under § 1983, the only proper defendant would be the arresting officer. *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014). Furthermore, a claim of malicious prosecution can only be maintained against the appropriate officials upon a showing that the criminal proceeding was resolved in the plaintiff's favor. *Id.* at 616. The criminal proceeding against the plaintiff does not appear to have been resolved, but is alleged to be ongoing.

Finally, to the extent that the plaintiff's allegations concerning his ongoing criminal prosecution could be viewed as inviting this court's intervention in those proceedings, the court

6

would be required to abstain from such intervention pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). *See Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017) ("*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity.").

Accordingly, the plaintiff fails to state a claim against the State of Tennessee or the Narcotics Division of the Metropolitan Nashville Police Department.

## II. Notice of Misspelling

The plaintiff has filed a notice (Doc. No. 6) that Officer Suleyman's name was misspelled in his pleadings, which referred to "Jiwawi Sulleyman" instead of Jiyayi Suleyman. The court has used the corrected spelling of Suleyman's name in this memorandum and order. Because Suleyman is not a named defendant, the court will not treat this notice of misspelling as a motion to amend the complaint. The Clerk is **DIRECTED** to terminate Docket No. 6 as a pending motion.

## III. Conclusion

For the reasons given above, this action is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.

In spite of this dismissal, the plaintiff is advised that if he wishes to amend his complaint to name Officer Suleyman as a defendant, he may seek permission to do so by filing a motion for leave to amend. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). Any such motion for leave to amend **MUST** be filed within **thirty (30) days** of the entry of this order.

It is so **ORDERED**.

ENTER this 7th day of February 2019.

_____
Aleta A. Trauger
United States District Judge